## Frank C. Hitchcock v. Village of Princeville.

1. EVIDENCE—*Preponderance Not Always with the Greater Number of Witnesses.*—The preponderance of evidence does not necessarily depend upon the number of witnesses on each side.

**Action for the Violation of an Ordinance.**—Trial in the Circuit Court of Peoria County, on appeal from a justice of the peace; the Hon. LESLIE D. PUTERBAUGH, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the May term, 1899. Affirmed. Opinion filed July 20, 1899.

J. H. HOPKINS and ISAAC C. EDWARDS, attorneys for appellant.

J. A. CAMERON and ROBERT SCHOLES, attorneys for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

Frank C. Hitchcock was convicted before a justice of the peace of selling intoxicating liquors in the village of Princeville, in violation of an ordinance. On a trial in the Circuit Court on appeal he was again convicted, and from that judgment again appeals.

His main contention here is that he should have been granted a new trial, on the ground of surprise and newly-discovered evidence. At the trial in the Circuit Court Austin Moats and George Moats each testified to purchasing whisky from Hitchcock at his place of business in Princeville at dates within the period named in the complaint. They had not testified at the trial before the justice. Upon the motion for a new trial Hitchcock sought to show by his own affidavit, that before the trial in the Circuit Court he had used due diligence to ascertain who would be witnesses against him, and did not learn of Austin and George Moats, and was taken by surprise by their testimony. He filed many affidavits tending to show that on the two occasions testified to by Austin and George Moats, respect-

ively, other persons were present who would testify that Austin and George Moats did not get whisky 'or other intoxicating liquor from Hitchcock at those times; that the reputation of Austin and George Moats for truth and veracity was bad in the community where they lived; and that George Moats had made statements since the trial at variance with his testimony, and implying he testified for money. If the conviction rested on the testimony of Austin and George Moats, these affidavits present the question whether it is shown Hitchcock used due diligence to prepare for trial, inasmuch as he only swears he did so, without stating what steps he took, nor of whom he inquired to learn who would be witnesses against him; and also whether a new trial should be granted merely to permit the introduction of cumulative testimony, as Hitchcock at the trial testified he did not sell whisky to Austin and George Moats at the dates named by them.

But there was evidence of other sales by Hitchcock in violation of the ordinance. Edward Boyle testified that he got one drink of whisky at Hitchcock's place of business in Princeville within the time covered by the complaint. He testified he did not know Hitchcock and did not know whether it was Hitchcock personally who waited upon him, but he described minutely the building, room, and Hitchcock's sign upon it, and no effort was made to show he was mistaken in the place. Hitchcock was a witness, but did not deny selling whisky to Boyle.

P. J. Beardsley testified that within the time in question at Hitchcock's place of business in Princeville he saw Hitchcock serve Frank Gallup liquor; that he saw the liquor, and from its odor and appearance was of opinion it was whisky, and that he was confirmed in that opinion by the odor of Gallup's breath when he was talking with Gallup a few minutes later. Gallup, for the defense, testified that on that occasion he called for whisky, but Hitchcock refused it and gave him Hungarian blackberry juice, which he drank, and which was not intoxicating, and did not contain alcohol, and that he drank nothing else at that time, except seltzer

water to take the taste out of his mouth. Fast, for the defense, testified he was present playing cards, and heard talk about Hungarian juice and heard it proposed to Gallup, but did not know what Gallup in fact took; that he had taken Hungarian blackberry juice, but never more than one glass at a time, and that it was not intoxicating. Hitchcock, though a witness as before stated, did not deny selling whisky to Gallup on that occasion, nor did he testify as to the qualities of Hungarian blackberry juice. It was for the jury to say whether they believed Beardsley, or Gallup and Fast, for the preponderance of evidence does not necessarily depend upon the number of witnesses on each side. Hitchcock took the stand and denied selling whisky to Austin and George Moats, and was silent as to Boyle and Gallup and the Hungarian blackberry juice. His silence on these subjects, while testifying upon others, was proper for the consideration of the jury, and they may have drawn therefrom the inference that he could not deny selling whisky to Boyle and Gallup. No one attempted to deny Boyle's testimony.

There was therefore uncontradicted testimony justifying a conviction for the sale to Boyle, and evidence from which the jury might have found a sale to Gallup. Hence, if the evidence of the Moatses could be impeached and overthrown that would not be conclusive of the case. Therefore the affidavits filed did not require the court below to grant a new trial.

Complaint is made of an instruction that it was not necessary to prove spirituous liquors are intoxicating liquors. As the term "spirituous liquors" does not seem to have been used by any witness, and as the only evidence that the Hungarian blackberry juice was spirituous was that it was whisky, and as the only evidence upon which Hitchcock could have been convicted was of sales of whisky, which the courts will take judicial knowledge is both spirituous and intoxicating, the language used in the instruction was unimportant in this case. The judgment is affirmed.